UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

BRANDON M. COLLINS                    CIVIL ACTION NO. 3:10-cv-1891
        LA. DOC. #448351
VS.                                   SECTION P

                                      JUDGE ROBERT G. JAMES

STEVE MAY, ET AL.                     MAGISTRATE JUDGE KAREN L. HAYES

REPORT AND RECOMMENDATION

*Pro se* plaintiff Brandon M. Collins, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 13, 2010.  Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections; he is incarcerated at the Caldwell Parish Corrections Center (CPCC), Grayson, Louisiana. However, he complains that he was exposed to unconstitutional conditions of confinement during the time he was incarcerated at the Caldwell Parish Jail (CPJ), from August 11 – December 2, 2010.  He sued Caldwell Parish Sheriff Steve May, CPJ Warden Futch and Assistant Warden Bob Perdue. He asks that the defendants be "prosecuted [and] punished to the full extent of the law" and he seeks compensatory damages in the amount of $10,000. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

*1. Original Complaint [Doc. #1]*

        Plaintiff was incarcerated at a facility he identifies as the Caldwell Parish Jail in Columbia,

Louisiana,  from August 11 through December 2, 2010. It was initially unclear whether he was a convict or a detainee during that time, but he confirmed in his amended complaint that he was an inmate in the custody of the LDOC.  Plaintiff complained that he was exposed to black mold and rust, peeling paint, bad wiring, no guard rails or ladders for top bunks, and kitchen workers who were not required to wear hair nets. He also complained that medical intake was insufficient because incoming prisoners are not screened for tuberculosis.  Plaintiff also complained that he was shackled for a period of 24 hours on December 1-2, 2010 for no reason.

### 2. Request for Documents [Doc. #4]

On January 4, 2011, plaintiff corresponded with the Clerk requesting confirmation that his complaint was received and filed and requesting copies of unspecified documents sent to the court, presumably, a copy of the complaint and *in forma pauperis* application.

### 3. Transfer Notice [Docs. #5 and 6]

On January 6, 2011, the accounts officer at JPCC advised the Clerk that plaintiff had been released from custody. On January 12, 2011, plaintiff advised that he was transferred to the Caldwell Corrections Center.

### 4. Amend Order [Doc. #8]

On February 17, 2011, plaintiff was directed to amend his complaint to provide a more specific statement of the case.  Plaintiff was ordered to provide the names of each person who violated his rights; a description of the violation, the date and place of the violation; and the injury sustained as a result of the violation.

### 5. Amended Complaint [Doc. #9]

On March 2, 2011, plaintiff submitted an amended complaint.  He alleged that he was

incarcerated at the Caldwell Parish Jail from August 11, 2010, to December 2, 2010. He complained that on October 18, 2010, he "... attempted to jump into my top bunk bed; my hand slipped and as a result of that I fell to the ground bumping my head on a locker breaking the skin causing me to bleed..." Plaintiff showed his injury to Assistant Warden Perdue who advised plaintiff to be more careful in the future. Plaintiff maintained that the accident would not have happened if ladders were provided. He obtained a grievance form and submitted the grievance to prison authorities but did not receive a response.

On November 17, 2010, plaintiff discovered a hair in his lunch plate. He showed the hair to Warden Futch who opined that the hair was from plaintiff's head. Plaintiff argued, however, that the kitchen workers are not required to wear hair nets. Plaintiff refused to eat the meal. Futch refused to give plaintiff a grievance so plaintiff wrote a letter to Sheriff May, who, as of the date of filing, had not responded.

On November 25, 2010, plaintiff noticed black mold, bad wiring, peeling paint and a lot of rust located in unspecified areas of the prison. Plaintiff complained of these conditions in a letter to Sheriff May, who, as of the date of filing had not responded.

On December 1, 2010, Warden Futch shackled plaintiff's left leg to the cell bars for 24 hours without a write up or other disciplinary charge. Plaintiff claims that as a result he feels "sharp pains in [his] right ankle."

Plaintiff did not re-assert his claim concerning TB testing.

Plaintiff claimed that his exposure to these conditions have resulted in head aches, bad dreams, fear of shackles, anger, depression, and insomnia.

Plaintiff also confirmed that he was an LDOC convict when the complained of events

occurred. [See Doc. #9 at p. 5]

*6. Correspondence and Motion for Copies [Docs. #10-11]*

On April 5, 2011, and April 12, 2011, plaintiff again asked again for copies of the original documents he mailed to the Court.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

4

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's original complaint set forth his claim and the basis for his cause of action; he was instructed to amend his complaint to provide more specific factual support for his claims. He  filed an amended  complaint as instructed and submitted copies of documentary evidence which  provide additional details and facts needed to resolve his claim. He need not be permitted further amendment because his allegations  – taken as true for the purposes of this report –   fail to state a claim for which relief may be granted.

## 2. Conditions of Confinement

Plaintiff is a convict who complains that he was exposed to unhealthy conditions of confinement while he was incarcerated at Caldwell Parish Jail during the period from August 11 – December 2, 2010.  He complained that on October 18, 2010, he "... attempted to jump into my top bunk bed; my hand slipped and as a result of that I fell to the ground bumping my head on a locker

breaking the skin causing me to bleed...” Plaintiff showed his injury to Assistant Warden Perdue who advised plaintiff to be more careful in the future.  Plaintiff maintained that the accident would not have happened if ladders were provided. He obtained a grievance form and submitted the grievance to prison authorities but did not receive a response.

He also complained that on  November 17, 2010, he discovered a hair in his lunch plate. He showed the hair to Warden Futch who opined that the hair was from plaintiff's head. Plaintiff argued, however, that the kitchen workers are not required to wear hair nets.  Plaintiff refused to eat the meal. Futch refused to give plaintiff a grievance so plaintiff wrote a letter to Sheriff May, who, as of the date of filing, had not responded.

He also alleged that on November 25, 2010 plaintiff noticed black mold, bad wiring, peeling paint and a lot of rust located in unspecified areas of the prison.  Plaintiff complained of these conditions in a letter to Sheriff May, who, as of the date of filing had not responded.

Finally, he claimed that on  December 1, 2010 Warden Futch shackled plaintiff's leg  to the cell bars for 24 hours without a write up or other disciplinary charge. Plaintiff claims that as a result he feels “sharp pains in [his] right ankle.”

Plaintiff claimed that his exposure to these conditions has resulted in head aches, bad dreams, fear of shackles, anger, depression, and insomnia.

The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment.

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain. See *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). While the Eighth

6

Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).  "For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be 'cruel and unusual' under contemporary standards." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  In order to prevail in a conditions of confinement claim the prisoner must characterize and ultimately prove  the deprivation he experienced was the "... deliberate deprivation of [an] ... identifiable human need, or ... a condition which placed the plaintiff's health or welfare in imminent danger which the defendants were aware of yet ignored." *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)

Plaintiff's first complaint – that his bed was not equipped with a ladder to allow for easier access to the upper bunk – fails to state a claim for which relief may be granted. *Compare Johnson v. LeBlanc*, Civil Action No. 09-cv-0719 (M.D. La) at 2010 WL 4116651 ("the failure of prison officials to equip the plaintiff's bunk with a ladder simply does not amount to the deprivation of 'a minimal civilized measure of life's necessities.'" quoting and citing  *Armstrong v. Terrebonne Parish Sheriff*, 2006 WL 1968887 (E.D. La., June 6, 2006); *Connolly v. County of Suffolk*, 533 F.Supp.2d 236 (D.Mass.2008); and *Wilson v.. State*, 2002 WL 31499736 (W.D.Va., May 6, 2002). Plaintiff, by his own admission "... attempted to jump into" his bunk and then "slipped" and fell to the ground. Clearly, the cause of plaintiff's fall and resulting head injury were the result of his own

carelessness and not the deliberate indifference of the defendants. Further, plaintiff was incarcerated at the offending institution from August 11 to December 2, 2010, a period of over 100 days. Presumably, he managed to safely and successfully enter his bed on all but one of those days. Clearly plaintiff fails to state a claim for which relief may be granted.

Likewise, plaintiff's complaint about the attire of the food service workers and the fact that on at least one occasion he discovered a hair in his food does not state a claim under the Eighth Amendment. While the Constitution grants prisoners the right to food that meets their basic nutritional needs,  there is no Constitutional  right to have a meal that is immaculate or particularly appealing. See *Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir.1999); *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996), citing *George v. King*, 837 F.2d 705, 707 (5th Cir.1988).  Isolated incidents of finding objects, such as hair, in prison meals simply do not support a Constitutional violation. *Compare,  George v. King, supra* (unintended food poisoning). Presumably, plaintiff was served 3 mails per day during his period of confinement. As noted above, he was incarcerated at the offending institution for over 100 days. His complaint concerning the "contamination" of a few meals likewise does not state a cause of action.

Further, as noted, plaintiff was incarcerated at the offending institution from August  to the beginning of December 2010, yet he did not notice the presence of bad wiring, black mold, peeling paint, and rust at the institution until November 25, 2010, more than 3 months after his arrival.  His exposure to these conditions, while regrettable, and no doubt uncomfortable, does not give rise to a Constitutional claim.

Finally, he claimed that for a 24 hour period he was shackled for no legitimate reason. While that claim is potentially troublesome, as shown below, it does not appear that plaintiff suffered any

8

more than a *de minimis* injury to his ankle and vague psychological injuries as a result of the incident.

Thus, with regard to the injuries or harm sustained as a result of his exposure to these conditions, plaintiff could only claim that, with regard to the bunk bed incident,  he "bumped his head... breaking the skin" which caused some bleeding but apparently no serious injury.  With regard to the hair incident, he claimed only to have missed one meal.  With regard to the wiring, rust, mold, and peeling paint, plaintiff alleged no credible injury or harm resulting from his exposure to these conditions. Finally, with regard to the otherwise troublesome shackling incident, he alleged "sharp pains in [his] right ankle" along with a generalized fear of shackles.

Otherwise, with regard to the totality of the conditions complained of, plaintiff claimed only that his exposure to these conditions resulted in head aches, bad dreams, anger, depression, and insomnia.  However, plaintiff seeks compensatory damages and his failure to allege a credible and more than *de minimis* physical injury prohibits recovery.  Title 42 U.S.C. § 1997e(e) provides,  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The injury required by this statute must be more than *de minimis*, but need not be significant. *Alexander v. Tippah County, Mississippi*, 351 F.3d 626, 630-31 (5th Cir.2003). The only physical injuries described by plaintiff were the bump to his head and head aches occasioned by the bunk bed accident  and the sharp ankle pains experienced as a result of the shackling incident. Such injuries, while regrettable, were clearly *de minimis*.  In *Luong v. Hatt*, 979 F.Supp. 481 (USDC - ND Tex. 1997), court analyzed the "physical injury" requirement in the context of excessive force or failure to protect claims.  The court reasoned that the determination of whether or not an injury exceeds the

*de minimis* threshold should be determined based upon how "...people in a free world setting in exercising their day-to-day medical care would treat such injuries." *Luong*, 979 F. Supp. at 486. The court reasoned,

> Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate *de minimis* standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice?
>
> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the injury needed to rise about [sic] *de minimis*, would ... require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e)." *Id.* (Emphasis Supplied)

Finally, in addition to compensatory damages, plaintiff has requested the prosecution and punishment of the defendants. Decisions whether to prosecute or file criminal charges against an individual lie within the prosecutor's discretion, as a prerogative of the executive branch of government and private citizens do not have a constitutional right to have an individual criminally prosecuted. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979); see also *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

### *Recommendation*

Therefore,

Plaintiff's Motions for Copies of the pleadings he filed previously [Doc. #11] is **GRANTED**

and the Clerk is directed to send plaintiff copies of his original complaint [Doc. #1] and his Amended Complaint [Doc. #9] and further,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, April 27, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE